IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

IRINA SHELIKHOVA,

     Plaintiff,

v.                                  CASE NO. 4:15-cv-472-MW-GRJ

JOHN THOMAS,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff, a federal prisoner proceeding *pro se*, initiated this action

pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of*

*Narcotics*, 403 U.S. 388 (1971). This case is presently before the Court on

Defendants' Motion to Dismiss Plaintiff's First Amended Complaint or in the

Alternative, Motion for Summary Judgment. (ECF No. 22.) Plaintiff has filed

a response and surreply in opposition to the motion, (ECF Nos. 23, 30),

and therefore, this matter is ripe for review. For the reasons that follow, the

undersigned recommends that Defendant's motion to dismiss, or in the

alternative, for summary judgment be granted.

# I.  INTRODUCTION

Plaintiff asserts First, Fifth, and Eighth Amendment claims against Defendant, which arise from the refusal to place Plaintiff's son on Plaintiff's approved visitation list and a failure to provide detailed justification for this refusal. (ECF No. 8.)[1] As relief, Plaintiff seeks placement of her son on Plaintiff's approved visitation list or a detailed explanation as to why he cannot be placed on the list. (*Id.*) Defendant argues that he is entitled to qualified immunity and that Plaintiff has failed to state a claim upon which relief may be granted. (ECF No. 22.) Defendant requests that the Court dismiss this action, or in the alternative, enter summary judgment in his favor. (*Id.*)

Defendant filed a sworn declaration in support of his motion. (ECF No. 22-1 ("Thomas Dec.").) Under Fed. R. Civ. P. 12(d), when matters outside the pleadings are presented in support of a motion to dismiss

---

[1] Plaintiff's first amended complaint also names Warden Jones and AUSA Sarah Hall as Defendants. The Court, however, declined to serve Defendant Jones because Plaintiff's allegations show that Defendant Jones was named only because she was responsible for the overall management of the prison, which is not a proper basis for liability under *Bivens*. (ECF No. 15 at 1 n.1) (citing *Hope v. Bureau of Prisons*, 476 F. App'x 702 (11th Cir. 2012)). The Court also declined to serve Defendant Hall because Plaintiff's allegations show that the actions taken by Defendant Hall were in connection with her role as a prosecutor in Plaintiff's criminal case. (*Id.*) (citing *Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999)).

pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which

relief may be granted, the motion must be treated as one for summary

judgment under Fed. R. Civ. P. 56.

> Under Fed. R. Civ. P. 56(c),

> [a] party asserting that a fact cannot be or is genuinely disputed
> must support the assertion by:
> (A) citing to particular parts of materials in the record,
> including depositions, documents, electronically stored
> information, affidavits or declarations, stipulations (including
> those made for purposes of the motion only), admissions,
> interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the
> absence or presence of a genuine dispute, or that an adverse
> party cannot produce admissible evidence to support the fact.

Where a matter must be supported or evidenced by a sworn declaration or

affidavit, the matter may be supported or evidenced by an unsworn

declaration which is subscribed as true under penalty of perjury and dated.

28 U.S.C. § 1746.

> If a party fails to properly support an assertion of fact or fails to
> properly address another party's assertion of fact as required
> by Rule 56(c), the court may: (1) give an opportunity to properly
> support or address the fact; (2) consider the fact undisputed for
> purposes of the motion; (3) grant summary judgment if the
> motion and supporting materials—including the facts
> considered undisputed—show that the movant is entitled to it;
> or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

Plaintiff first filed an unsworn response to the motion to dismiss or in the alternative motion for summary judgment. (ECF No. 23.) The response was not submitted under penalty of perjury. (*Id.*) Because Defendant's motion relies upon matters outside of the pleadings, the Court then issued a summary judgment notice on July 12, 2016. (ECF No. 28.) The notice advised Plaintiff that because the Court will consider the matter as a summary judgment motion, Plaintiff was required to file any supporting evidentiary materials, such as counter-affidavits, depositions, and exhibits, within 30 days, and may not rely solely on the allegations of the issue pleadings in opposing the summary judgment motion. (*Id.*) Plaintiff then filed a timely surreply under penalty of perjury in opposition to the motion for summary judgment. (ECF No. 30.)

Because Plaintiff's surreply was submitted under penalty of perjury, the Court may consider the facts asserted in the surreply when ruling on the motion for summary judgment. The allegations in Plaintiff's unsworn response, however, may not be considered as evidence when ruling on the motion for summary judgment. *See McCaskill v. Ray*, 279 F. App'x 913, 915 (11th Cir. 2008) (litigant's unsworn allegations were not admissible on motion for summary judgment where litigant did not attempt to make the

declarations under penalty of perjury).

In addition, Plaintiff's first amended complaint, ECF No. 8 ("Compl."), which was signed under penalty of perjury, is treated by the Court like a sworn affidavit. *See Sammons v. Taylor*, 967 F.2d 1533, 1545 n.5 (11th Cir. 1992) ("[T]his Court has recognized that facts alleged in an inmate's sworn pleading are sufficient [to defeat a properly supported motion for summary judgment] and that a separate affidavit is not necessary."). Accordingly, Plaintiff's sworn allegations in her first amended complaint may also be considered in ruling on the motion for summary judgment.

## II.  EVIDENCE

Defendant Thomas has been employed by the Bureau of Prisons ("BOP") as a Counselor at the Federal Correctional Institution in Tallahassee, Florida ("FCI Tallahassee") since 1993. (Thomas Dec. ¶ 1.) As part of his duties, Defendant develops inmates' visitation lists. (*Id.* ¶ 2.) Pursuant to BOP Program Statement 5267.09 ("PS 5267.09"), Defendant Thomas reviews all proposed visitors on an inmate's visitation list and conducts an investigation to ensure the visits would not pose a threat to the security or good order of the institution. (*Id.* ¶ 4.) PS 5267.09 permits the Warden to restrict visitation when necessary to ensure the security and

good order of the institution. (*Id.* ¶ 5.) Immediate family members are generally not excluded from the visitation list absent strong circumstances that preclude permitting visitation. (*Id.*)

According to PS 5267.09, when an inmate seeks visitation with someone who has a prior criminal conviction, the Unit Team first obtains written authorization from the proposed visitor's Federal or State probation or parole officer. (*Id.* ¶ 6.) Once the counselor obtains written authorization, the counselor conducts an individualized review where "consideration is given to the nature, extent and recentness of convictions weighed against the security considerations of the institution." (*Id.* ¶ 7.) Specific approval of the Warden may also be required before visits may take place between an inmate and a proposed visitor with a prior criminal conviction. (*Id.*)

On February 28, 2014, Plaintiff sent Defendant an Inmate Request to Staff for her son, Maksim Shelikhov, to visit. (*Id.* ¶ 8; Compl. at 9.) Mr. Shelikhov is Plaintiff's only child. (ECF No. 30 at 2, ¶ 2 ("Plaintiff Dec.").) Upon investigation, Defendant learned that Mr. Shelikhov was a co-defendant in Plaintiff's criminal case. (Thomas Dec. ¶ 9.)[2] Defendant

---

[2] Mr. Shelikhov was released from the BOP on January 16, 2014. (Thomas Dec. ¶ 9.)

believed that there was potential for disagreement between Plaintiff and Mr. Shelikhov in the visiting room because Mr. Shelikhov had testified against Plaintiff in her criminal case. (Thomas Dec. ¶ 12.) Defendant believed the potential for disagreement could impact the security, safety, and orderly running of the institution. (*Id.*) Defendant also reviewed Mr. Shelikhov's criminal history and discovered that there was an entry in the Central Inmate Monitoring System ("CIMS") that raised security concerns about Plaintiff's visitation request. (*Id.* ¶ 10.) At the time, Defendant did not have a visitation form signed by Mr. Shelikhov that included the name and telephone number of his probation or parole officer. (*Id.* ¶ 11.) Thus, Defendant did not have a recommendation from Mr. Shelikhov's supervising officer for approval of the visitation request. (*Id.*) Plaintiff says, however, that Defendant did not perform a suitable investigation into Mr. Shelikhov. (Compl. at 10.)

Based on the lack of a visitation form and the security concerns disclosed in the CIMS entry, Defendant denied Plaintiff's visitation request in writing on February 28, 2014. (Thomas Dec. ¶ 12.) BOP Program Statement 5180.05(8)(b) ("PS 5180.05") permits the notice of the basis of the denial to be limited in the interest of security or safety. (*Id.*)

Accordingly, the denial notice cited "security concerns," but did not disclose the nature, circumstances, or type of security concerns. (*Id.*; Compl. at 10.) Nonetheless, Plaintiff says BOP policy required Defendant to identify the strong circumstances that preclude a member of her immediate family from visiting her. (Compl. at 10.) Plaintiff also says Defendant failed to identify if or how he weighed the nature, extent, and recentness of Mr. Shelikhov's conviction against the security considerations of the institution. (*Id.* at 11.)

Plaintiff then submitted an informal resolution request on July 14, 2014, which was denied for the same security concerns. (Thomas Dec. ¶ 13.) Plaintiff admits that she was notified in writing and via face-to-face meetings that her requests were denied for security reasons. (Compl. at 9.)

Then on July 28, 2014, Plaintiff filed a request for administrative remedy. (Thomas Dec. ¶ 14.) On August 6, 2014, Plaintiff's Case Manager, Mr. Stanley, advised that Mr. Shelikhov's supervising officer, Ms. Jaquita Mitchell, would not authorize Mr. Shelikhov to travel from New York to Florida to visit Plaintiff because Mr. Shelikhov had not yet secured employment or a stable residence. (*Id.* ¶ 15.) Mr. Shelikhov was, therefore, not in compliance with the conditions of his supervision. (*Id.*) Accordingly, the Warden denied Plaintiff's request for administrative remedy. (*Id.* ¶ 16.)

On November 11, 2014, Defendant contacted one of the Assistant United States Attorneys ("AUSA") that prosecuted Plaintiff. (*Id.* ¶ 17.) The AUSA did not object to Plaintiff's request for visitation with Mr. Shelikhov but recommended that Defendant speak with Ms. Mitchell. (*Id.*) Ms. Mitchell then advised Defendant that Mr. Shelikhov still had not secured employment or a stable residence. (*Id.*) Thus, Ms. Mitchell still would not authorize Mr. Shelikhov to travel to Florida to visit Plaintiff. (*Id.*) Plaintiff says, however, that Defendant refused to talk with the AUSA. (Compl. at 11.)

Ms. Mitchell later advised that Mr. Shelikhov was in compliance with the terms of his supervision. (Thomas Dec. ¶ 18.) The lead Department of Justice ("DOJ") attorney that handled Plaintiff's criminal prosecution, however, maintained that security concerns about permitting visitation still existed. (*Id.*)[3]

Plaintiff again requested visitation with Mr. Shelikhov. (*Id.* ¶ 19.) On March 31, 2016, the Unit Team—consisting of Defendant, Mr. Stanley, and the Unit Manager—submitted Plaintiff's request to the Warden. (*Id.*) The

---

[3] Plaintiff was prosecuted jointly by the Eastern District of New Jersey and the DOJ, Criminal Division, Fraud Section. (Thomas Dec. ¶ 18 n.4.)

Unit Team did not support the request and the Warden upheld the denial on April 8, 2016. (*Id.*) Although Mr. Shelikhov's supervising officer has authorized him to travel for visitation, security concerns still remained based on the CIMS entry and the information provided by the DOJ. (*Id.* ¶ 20.) Accordingly, Mr. Shelikhov has not been authorized to be on Plaintiff's visitation list. (*Id.* ¶ 23.) Nonetheless, Plaintiff is permitted to communicate with Mr. Shelikhov via telephone, mail, electronic communication, and video conferencing. (*Id.*)

Based on PS 5180.05, Defendant is unable to discuss the nature and circumstances of the security concerns with Plaintiff. (*Id.* ¶ 21.) Defendant also attests that in accordance with PS 5267.09, it is his belief that there is sufficient evidence to establish that the approval of Plaintiff's request for visitation with Mr. Shelikhov poses a threat to the security and good order of the institution. (*Id.* ¶ 22.)

Plaintiff says, however, that Defendant told Plaintiff  "AUSA Sarah Hall placed an entry into the Sentry system, which prevents physical contact between mother and son, and that no security threat exist[s] at all, it is simply AUSA Sarah Hall's wish." (Compl. at 9.) AUSA Hall had no reason to keep her and Mr. Shelikhov separate other than two reasons: (1)

continued manipulation of Mr. Shelikhov for potential future testimony in

case Plaintiff prevails on appeal; and (2) to inflict cruel and unusual

punishment on Plaintiff by isolating her from her only child. (Compl. at 9,

12.)  Moreover, according to Mr. Shelikhov's attorney, the CIMS

assignment was not requested by any of the AUSAs or DOJ lawyers

assigned to Plaintiff's case. (Plaintiff Dec. ¶ 4.)

### III.  STANDARD OF REVIEW

Because the Court has considered matters outside of the allegations

in the amended complaint, the procedures relating to summary judgment

apply. In accordance with Rule 56(a), the entry of summary judgment is

appropriate only when the Court is satisfied that "there is no genuine

dispute as to any material fact and that the movant is entitled to a judgment

as a matter of law." In applying this standard, the Court must examine the

pleadings, depositions, answers to interrogatories, and admissions on file,

together with any affidavits and other evidence in the record "in the light

most favorable to the nonmoving party." *Samples on Behalf of Samples v.*

*Atlanta,* 846 F. 2d 1328, 1330 (11th Cir. 1988.) But, "when opposing

parties tell two different stories, one of which is blatantly contradicted by

the record, so that no reasonable jury could believe it, a court should not

adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) (internal quotations and citations omitted); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986) (to defeat summary judgment "there must be evidence on which the jury could reasonably find for the plaintiff") "The nonmovant need not be given the benefit of every inference but only of every reasonable inference." *Brown v. City of Clewiston,* 848 F.2d 1534, 1540 n. 12 (11th Cir.1988) ("The summary judgment standard requires that we resolve all reasonable doubts in favor of the non-moving party, but it does not require us to resolve all doubts in such a manner.").

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987.) The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. *See*

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785–86 (11th Cir. 2005.)

In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgement stage." *Beard v. Banks,* 548 U.S. 521, 530 (2006). Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact. *See, e.g., Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001.)

## IV. DISCUSSION

Plaintiff claims that Defendant violated her Fifth Amendment due process right by failing to evaluate Mr. Shelikhov's visitation under the appropriate BOP policies. (ECF No. 8.) She further alleges that Defendant violated her First Amendment right to familial association and subjected her to cruel and unusual punishment in violation of the Eighth Amendment. Defendant argues he is entitled to qualified immunity from Plaintiff's claims

because Plaintiff has failed to establish a constitutional violation.

Defendant further argues that he followed the prison's regulations which

satisfy the test set forth in *Turner v. Safley*, 482 U.S. 78, 89 (1987).

     As an initial matter, Defendant is not entitled to qualified immunity.

Generally, a *Bivens* claim permits an injured plaintiff to bring a private

cause of action for damages against federal officers based on violations of

constitutional rights. *Nalls v. Bureau of Prisons of U.S.*, 359 F. App'x 99,

101 (11th Cir. 2009).  Nonetheless, "[q]ualified immunity protects

government officials performing discretionary functions from suits in their

individual capacities unless their conduct violates 'clearly established

statutory or constitutional rights of which a reasonable person would have

known.'" *Andujar v. Rodriguez,* 486 F.3d 1199,1202 (11th Cir. 2007)

(citations omitted); *Brandon v. Holt,* 469 U.S. 464, 472-73 (1985). Qualified

immunity, however, is only available in suits for damages. *See, e.g.,*

*Ashcroft v. al-Kidd,* 131 S.Ct. 2074, 2080 ("Qualified immunity shields

federal and state officials from money damages"); *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982).

     In this case, as relief for the alleged constitutional violations Plaintiff

requests that "Maxim Shelikhov be placed on her approved visiting list

[thereby] allowing her face to face visit[s] with her only child." (ECF No. 8 at 7.) In the alternative, Plaintiff seeks "a detailed explanation [as to] why he cannot be placed on the visiting list and [why] it is a security threat." (*Id.* at 12.) Notably, Plaintiff does not seek monetary damages for the alleged constitutional violations. Similarly, her complaint does not suggest that the Court should liberally construe her requested relief to include monetary damages. *See Williams v. Brown*, 347 F. App'x 429, 436–37 (11th Cir. 2009) (noting that a district court should consider whether *pro se* plaintiff's complaint should be liberally construed to request nominal damages); *Magwood v. Sec'y, Fla. Dep't of Corrections*, 652 F. App'x 841, 845 (11th Cir. 2016) (holding that the district court erred in granting a motion to dismiss merely because plaintiff was not physically injured to receive compensatory damages where plaintiff's complaint requested appropriate relief generally and would have been entitled to nominal damages); *Holloway v. Bizzaro*, 571 F. Supp. 2d 1270, 1272 (S.D. Fla. 2008) (noting that "[c]omplaints which have been liberally interpreted to raise a request for nominal damages or equitable relief contain such phrases as 'such other relief as may appear that Plaintiff is entitled' or similar language"). Instead, Plaintiff only seeks injunctive relief, for which qualified immunity is

not a defense. *See Ratliff v. DeKalb Cnty., Ga.*, 62 F.3d 338, 340 n.4 (11th Cir. 1995) ("Because qualified immunity is only a defense to personal liability for monetary awards resulting from government officials performing discretionary functions, qualified immunity may not be effectively asserted as a defense to a claim for declaratory or injunctive relief."). Accordingly, the qualified immunity defense has no applicability to Plaintiff's claims.

Turning to Defendant's argument that Plaintiff has failed to establish a constitutional violation, the undisputed evidence fails to demonstrate that Defendant violated either Plaintiff's First, Fifth, or Eighth Amendment right. Plaintiff is, therefore, not entitled to injunctive relief.

> To obtain a permanent injunction, a party must show: (1) that he has prevailed in establishing the violation of the right asserted in his complaint; (2) there is no adequate remedy at law for the violation of this right; (3) irreparable harm will result if the court does not order injunctive relief; and (4) if issued, the injunction would not be adverse to the public interest.

*Thomas v. Bryant*, 614 F.3d 1288, 1317 (11th Cir. 2010); *see also* 18 U.S.C. § 3626(a)(1)(A) (under the Prison Litigation Reform Act, injunctive relief is only appropriate where the relief is "narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right"). The dispositive factor in this case is that Plaintiff has not prevailed

in establishing that Defendant violated either her First, Fifth, or Eighth

Amendment right.

## A.    First Amendment

The First Amendment "accords special protection to two different

forms of association, 'intimate association' and 'expressive association.'"

*McCabe v. Sharrett*, 12 F.3d 1558, 1562–63 (11th Cir. 1994) (citing

*Roberts v. United States Jaycees*, 468 U.S. 609, 617–18 (1984); *City of*

*Dallas v. Stanglin*, 490 U.S. 19, 23–25 (1989)). The right of intimate

association is the freedom to choose to enter into and maintain certain

intimate human relationships. *Id.* at 1563 (citing *Roberts*, 468 U.S. at

617–20). "At a minimum, the right of intimate association encompasses the

personal relationships that attend the creation and sustenance of a

family—marriage, childbirth, the raising and education of children, and

cohabitation with one's relatives." *Id.* (citing *Roberts*, 468 U.S. at 617–20).

Alternatively, the right of expressive association is "the freedom to

associate for the purpose of engaging in activities protected by the First

Amendment, such as speech, assembly, petition for the redress of

grievances, and the exercise of religion . . . ." *Id.* (citing *Roberts*, 468 U.S.

at 617–18, 622); *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 655 (2000)

(holding that associations must merely engage in expressive activity that

could be impaired in order to be entitled to the protections of the First

Amendment).

Nonetheless, it is well established that there is no absolute

constitutional right to visitation. *Evans v. Johnson*, 808 F.2d 1427, 1428

(11th Cir. 1987). The Supreme Court has explained that "[t]he very object

of imprisonment is confinement. Many of the liberties and privileges

enjoyed by other citizens must be surrendered by the prisoner. An inmate

does not retain rights inconsistent with proper incarceration." *Overton v.

Bazzetta*, 539 U.S. 126, 131 (2003). Although incarceration necessarily

limits or withdraws certain privileges and rights, a prisoner retains those

"rights that are not inconsistent with his status as a prisoner or with the

legitimate penological objectives of the corrections system." *Jones v. N.

Carolina Prisoners' Labor Union, Inc.*, 433 US. 119, 125 (1977) (quoting

*Pell v. Procuniere*, 417 U.S. 817, 822 (1974)). "[F]reedom of association is

among the rights least compatible with incarceration. . . . . Some

curtailment of that freedom must be expected in the prison context."

*Overton*, 539 U.S. at 131 (citing *Jones*, 433 U.S. at 125–26; *Hewitt v. Helms*, 459 U.S. 460(1983)).

"[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. A convicted prisoner's visitation privilege is "subject to the discretion of prison authorities; provided the visitation policies of the prison meet legitimate penological objectives." *Evans*, 808 F.2d at 1428 (citing *Lynott v. Henderson*, 610 F.2d 340, 342 (5th Cir. 1980); *McCray v. Sullivan*, 509 F.2d 1332, 1334 (5th Cir. 1975), *cert. denied*, 423 U.S. 859 (1975)).

In determining the reasonableness of the regulation at issue a court should consider four factors. *Turner*, 482 U.S. at 89. "First, there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." *Id.* (citing *Block v. Rutherford*, 468 U.S. 576, 586 (1984)). Second, the court should consider "whether there are alternative means of exercising the right that remain open to prison inmates." *Id.* at 90. "A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Id.*

Fourth, the court should consider whether there are ready alternatives to accomplish the regulation's purpose. *Id.* (citing *Block*, 468 U.S. at 587). In applying this test, courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton*, 539 U.S. at 132 (citations omitted).

Plaintiff has failed to prove that Defendant violated her First Amendment right. The undisputed evidence demonstrates that Defendant followed BOP visitation policies that meet legitimate penological objectives. Under the first *Turner* factor, there is a valid, rational connection between the regulation and visitation rights of inmates. The BOP reviews and investigates prospective visitors under PS 5267.09 to ensure that the visit would not pose any threat to the security and good order of the institution. PS 5267.09 further provides wardens with the authority to restrict inmate visiting when necessary to ensure the security and good order of the institution. There is little question that there is a legitimate government interest in ensuring the security and good order of FCI Tallahassee. *See Bell v. Wolfish*, 441 U.S. 520, 546–47 (1979) ("Central to all other

corrections goals is the institutional consideration of internal security within the corrections facilities themselves.").  Furthermore, there is a valid, rational connection between denying certain individuals visitation with a specific inmate and ensuring that the institution is secure and in good order. *See Overton*, 539 U.S. at 134 (noting that a regulation "prohibiting visitation by former inmates bears a self-evident connection to the . . . interest in maintaining prison security and preventing future crimes").

As to the second *Turner* factor, the evidence demonstrates that Plaintiff has alternative means to exercise her right to associate with Mr. Shelikhov. "Alternatives to visitation need not be ideal . . . they need only be available." *Id.* at 135. Plaintiff is permitted to associate with Mr. Shelikhov via telephone, mail, electronic communication, and even video conferencing. Thus, not only is Plaintiff able to speak with Mr. Shelikhov, she is also able to visually see him in real-time via video conferencing. *See id.* (discussing how respondents had "alternative means of associating with those prohibited from visiting," such as communicating "with those who may not visit by sending messages through those who are allowed to visit," and through "letter and telephone"). Despite Plaintiff's belief that these alternatives are not as ideal as being physically present with Mr. Shelikhov,

various alternatives are nonetheless available.

With regard to the third *Turner* factor, the undisputed evidence demonstrates that Plaintiff's request for visitation with Mr. Shelikhov poses security concerns that Defendant believes are a threat to the security and good order of FCI Tallahassee.  Accommodating Plaintiff's request, which poses a threat to the security and good order of the institution, could impact guards, other inmates, and prison resources generally.

Under the fourth factor, Plaintiff must prove that there is "an alternative that fully accommodates the prisoner's right at *de minimis* cost to valid penological interests." *Turner*, 482 U.S. at 91. Plaintiff, however, has not even proposed, must less presented any evidence, suggesting that there are ready alternatives to accomplish PS 5267.09's purpose of ensuring the security and good order of the institution.

In short, the evidence demonstrates that the visitation restrictions at FCI Tallahassee meet legitimate penological objectives and thereby satisfy the *Turner* analysis. *See Block*, 468 U.S. at 586–89 (upholding regulation prohibiting all contact visits at detention facility because "responsible, experienced administrators have determined, in their sound discretion, that such visits will jeopardize the security of the facility," and because the

regulation was "reasonably related" to these security concerns).

Moreover, the evidence demonstrates that Defendant followed the BOP visitation regulations in denying Mr. Shelikhov's visitation. It is undisputed that part of Defendant's job is to review proposed visitors and conduct an investigation to ensure their visits would not pose a threat to the security or good order of FCI Tallahassee. Upon investigation into Plaintiff's first request for visitation with Mr. Shelikhov, Defendant learned that Mr. Shelikhov was a co-defendant in Plaintiff's criminal case, who had testified against Plaintiff. Defendant believed there was potential for disagreement between Plaintiff and Mr. Shelikhov in the visiting room. Defendant also learned that there was an entry in CIMS that raised security concerns about Plaintiff's requests. Accordingly, Defendant believed approving Plaintiff's request could impact the security, safety, and orderly running of FCI Tallahassee. Consequently, Defendant denied Plaintiff's first visitation request as permitted under PS 5267.09 based on security concerns.

Similarly, Defendant denied Plaintiff's second request in March 2016 for the same security concerns. *See Caraballo-Sandoval v. Honsted*, 35 F.3d 521, 525 (11th Cir. 1994) (although warden denied prisoner's request

for visitation with his wife, a former prison employee, based on security concerns, "concerns that former prison employees visiting inmates may pose a threat to security because of their knowledge of security procedures constitutes a legitimate penological objective").

Moreover, Mr. Shelikhov had not submitted a visitation form so Defendant could not contact Mr. Shelikhov's probation officer in accordance with PS 5267.09. The mere fact that Defendant did not contact Mr. Shelikhov's probation officer does not suggest that Defendant failed to follow BOP polices.  The purpose of contacting the proposed visitor's probation officer is to obtain visitation *authorization* from the probation officer. Here, Defendant denied Plaintiff's first visitation request because he did not have a visitation form so he could not contact Mr. Shelikhov's probation officer for authorization. Although Plaintiff says that Defendant failed to perform a suitable investigation into Mr. Shelikhov, she has not presented any evidence in support of this claim. Moreover, Defendant did not deny Plaintiff's first request solely because he did not have authorization from Mr. Shelikhov's probation officer; instead, Defendant also denied the request for security reasons.

Despite the fact that Mr. Shelikhov is Plaintiff's son, the Constitution

does not provide her with an absolute right to visitation with Mr. Shelikhov.

The undisputed evidence demonstrates that in denying Plaintiff's visitation

requests, Defendant followed BOP policies that meet legitimate

penological objectives. Accordingly, Plaintiff has failed to demonstrate that

Defendant violated Plaintiff's First Amendment right. Summary final

judgment should be entered in Defendant's favor on Plaintiff's First

Amendment claim.

## B.    Fifth Amendment

"In order to establish a violation of the Due Process Clause, a

[plaintiff] must have been deprived of a liberty or property interest protected

under the Fifth Amendment. *Cook v. Wiley*, 208 F.3d 1314, 1322 (11th Cir.

2000). There are "two situations in which a prisoner can be further deprived

of his liberty such that due process is required." *Kirby v. Siegelman*, 195

F.3d 1285, 1290–91 (11th Cir. 1999). "The first is when a change in the

prisoner's conditions of confinement is so severe that it essentially exceeds

the sentence imposed by the court." *Id.* at 1291 (citing *Sandin v. Conner*,

515 U.S. 472, 484 (1995); *Vitek v. Jones*, 445 U.S. 480, 492–93 (1980)).

"The second situation is when the state has consistently bestowed a

certain benefit to prisoners, usually through statute or administrative policy,

and the deprivation of that benefit 'imposes atypical and significant

hardship on the inmate in relation to the ordinary incidents of prison life.'"

*Id.* (quoting *Sandin*, 515 U.S. at 484; *Wolff v. McDonnell*, 418 U.S. 539,

558 (1974)).

It is well established, however, that there is no absolute constitutional

right to visitation. *Evans*, 808 F.2d at 1428. Thus, an inmate does not have

a liberty interest in "unfettered visitation." *Kentucky Dep't of Corrections v.*

*Thompson*, 490 U.S. 454, 460–61 (1989)); *Charriez v. Sec'y, Fla. Dep't of*

*Corrections*, 596 F. App'x 890, 893 (11th Cir. 2015) ("The Supreme Court

has held that an inmate does not have a liberty interest in or right to

'unfettered visitation' and thus denial of visitation is not protected by the

Due Process Clause."). "The denial of prison access to a particular visitor

'is well within the terms of confinement ordinarily contemplated by a prison

sentence,' . . . and therefore is not independently protected by the Due

Process Clause." *Kentucky Dep't of Corrections*, 490 U.S. at 461 (citing

*Hewitt*, 459 U.S. at 468).

Plaintiff has failed to demonstrate that her Fifth Amendment due

process rights are implicated in the denial of visitation with her son. For

starters, there is no evidence suggesting that a lack of visitation with Mr.

Shelikhov so severely changed the conditions of Plaintiff's confinement that her sentence has essentially been increased. Similarly, the evidence does not demonstrate that denying Plaintiff's visitation request has imposed atypical and significant hardship on Plaintiff in relation to the ordinary incidents of prison life.

PS 5267.09 explicitly provides that the Warden may "restrict inmate visiting when necessary to ensure the security and good order of the institution." (Thomas Dec. ¶ 5.) PS 5267.09 further provides that members of the immediate family, such as children, are placed on the visiting list, "absent strong circumstances that preclude visiting." (*Id.*) The BOP regulations, therefore, do not create a protected liberty interest in visitation privileges. *See Caraballo-Sandoval*, 35 F.3d at 525 (concluding that similar language does not create a protected liberty interest in visitation privileges).[4] And, although Plaintiff claims that Defendant was required to identify the "strong circumstances" that preclude Mr. Shelikhov from

---

[4] The visitation regulations at issue in *Caraballo-Sandoval* provided: "The warden may restrict inmate visiting when necessary to ensure the security and good order of the institution. The visiting privileges shall ordinarily be extended to friends and associates having an established relationship prior to confinement, unless such visits could reasonably create a threat to the security and good order of the institution. Exceptions to the prior relationship rule may be made, particularly for inmates without other visitors . . . ." 35 F.3d at 525.

visiting, the visitation regulations do not include such a requirement.

(Thomas Dec. at 8–21.)

Likewise, the visitation regulations do not create a liberty interest in

being informed regarding the method in which a visitation investigation was

conducted. PS 5267.09 provides that when a proposed visitor has a prior

criminal conviction, an individualized review is conducted where

"consideration is given to the nature, extent and recentness of conviction

weighed against the security considerations of the institution." (Thomas

Dec. ¶ 7.)  As discussed, Defendant conducted an investigation into Mr.

Shelikhov as required. Although Plaintiff claims the investigation was not

suitable, she provides no suggestion or evidence as to how the

investigation was inadequate.  And to the extent Plaintiff takes issue with

Defendant's failure to provide an explanation of the investigation,

Defendant was not required to do so under BOP policies.

Furthermore, the visitation regulations do not create a liberty interest

in an inmate receiving a detailed reason as to why a request was denied.

PS 5180.05 provides that when an inmate has a CIMS assignment, "[t]he

case manager shall ensure that the affected inmate is notified in writing as

promptly as possible of the classification and the basis for it. . . . The notice

of the basis may be limited in the interest of security or safety." (Id. ¶ 12, n.1.)

Plaintiff admits that she was informed in writing and in-person that her visitation requests with Mr. Shelikhov were denied for security concerns. It is also undisputed that Plaintiff was informed of her CIMS assignment. (*Id*. n.2.) Thus, to the extent Defendant did not provide a detailed explanation regarding her CIMS assignment, Defendant was entitled to limit the notice of the basis for security reasons.

Despite Plaintiff's unsubstantiated claim that no security concern exists and that Ms. Hall placed the entry in the system merely to prohibit Plaintiff from having physical contact with her son, there is undisputed evidence that the DOJ maintains that security concerns exist about permitting visitation. Although Plaintiff says that none of the DOJ attorneys assigned to her case requested the CIMS assignment, (Plaintiff Dec. ¶ 4), Plaintiff does not dispute that the lead DOJ attorney nonetheless maintained that security concerns existed. (Thomas Dec. ¶ 18.) Thus, even if the CIMS entry is not valid, the undisputed evidence demonstrates that security concerns remained to justify the denial.

Although Plaintiff takes issue with the fact that the BOP regulations

do not define "security threat,"—which she says violates due process—that is not the issue before this Court. Mr. Thomas, is a counselor at FCI Tallahassee, who denied Plaintiff's visitation requests based on FBOP policy. The due process claim at issue before this Court is whether Mr. Thomas violated Plaintiff's right to due process, not whether the BOP's failure to define "security threat" is constitutional.

Furthermore, to the extent Plaintiff argues that this Court cannot adequately examine whether a security threat exists to justify the visitation denial, whether a security threat exists is neither the issue before this Court, nor would it be proper for this Court to determine such. *See Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989) (citing *Procunier v. Martinez*, 416 U.S. 396, 404–05 (1974)) ("Acknowledging the expertise of these [prison] officials and that the judiciary is 'ill equipped' to deal with the difficult and delicate problems of prison management, this Court has afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world.").

Finally, Plaintiff had the opportunity to participate in the BOP Administrative Remedy Program to seek review of her visitation

restrictions. The BOP Administrative Remedy Program is a three-tiered

process through which an inmate may seek review of any issue relating to

her incarceration. *See* 28 C.F.R. §§ 542.14–.15. Plaintiff engaged in the

initial step by filing a request for administrative remedy on July 28, 2014,

which the Warden denied. (Thomas Dec. ¶ 14, 16.) Plaintiff then had the

opportunity to file an appeal of the Warden's denial to the Regional

Director. § 542.15(a). Then as the final step, if the Regional Director

denied her appeal, Plaintiff could have submitted an appeal to the General

Counsel. *Id.* Accordingly, a process existed for Plaintiff to challenge the

visitation denials, which further belies her claim that she was denied due

process.

In sum, based on the undisputed vidence, no reasonably jury could

conclude that Defendant violated Plaintiff's right to due process. Defendant

should be granted summary judgment in his favor  on the Fifth Amendment

claim.

**B.    Eighth Amendment**

Finally, Plaintiff's Eighth Amendment claim that Defendant subjected

her to cruel and unusual punishment fails.

"In the prison context, three distinct Eighth Amendment claims are

available to plaintiff inmates alleging cruel and unusual punishment, each of which requires a different showing to establish a constitutional violation." *Thomas*, 614 F.3d at 1303. "The Eighth Amendment can give rise to claims challenging specific conditions of confinement, the excessive use of force, and the deliberate indifferent to a prisoner's serious medical needs." *Id.* at 1303–04.

Plaintiff does not specify which type of Eighth Amendment claim she asserts. Nonetheless, her claim can only be construed as one challenging specific conditions of confinement—specifically, being prohibited from engaging in contact visits with her son.[5]

"Generally speaking, prison conditions rise to the level of an Eighth Amendment violation only when the 'involve the wanton and unnecessary infliction of pain.'" *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The Supreme Court has developed a two-part analysis governing Eighth Amendment challenges to prison conditions. *Id.* Under the objective prong, the prisoner must prove that the condition she complains of is sufficiently serious to violate the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1,

---

[5] Neither Plaintiff's complaint, nor the evidence, suggests that Plaintiff was subjected to excessive use of force or deliberate indifference to a serious medical need.

8 (1992). To be sufficiently serious, the condition must be extreme, thereby posing an unreasonable risk of serious damage to her future health or safety. *Chandler*, 379 F.3d at 1289 (citing *Hudson*, 503 U.S. at 9; *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). Under the subjective prong, the prisoner must prove that the prison official "acted with a sufficiently culpable state of mind" with respect to the condition at issue. *Hudson*, 503 U.S. at 8. To act with a sufficiently culpable state of mind, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

In this case there is no evidence suggesting that the denial of Plaintiff's ability to engage in in-person visits with her son poses an unreasonable risk of serious damage to Plaintiff's future health or safety. To the extent Plaintiff claims this is the worst form of punishment, the denial of visitation simply has nothing to do with placing Plaintiff's health or safety in serious danger. Although the denial of face-to-face visits with her son undoubtedly makes Plaintiff's confinement more difficult, there is no evidence suggesting that it is extreme. *See Overton*, 539 U.S. at 136–37 (restriction on visitation for inmates with two substance-abuse violations

was not a cruel and unusual condition of confinement because the regulation was not a dramatic departure from accepted standards for conditions of confinement, did not deprive inmates of basic necessities, and did not fail to protect their health or safety).

Moreover, Plaintiff has not been denied all contact with her son. Rather, Plaintiff  is permitted to engage in visitation with Mr. Shelikhov via telephone, mail, electronic communication, and even video conferencing. *Cf. id.* at 137 (noting that the case would present different considerations if the withdrawal of all visitation privileges were permanent or applied in an arbitrary manner to a particular inmate).

In addition, there is no evidence that Plaintiff has been denied in-person visitation with other individuals or that the prohibition is permanent in Plaintiff's case. Indeed, Plaintiff's request has been revisited on several occasions.

Because there is no evidence that a substantial risk of serious harm exists from the denial of visitation with her son, there is no evidence supporting the subjective prong of the analysis.  Consequently, Plaintiff's Eighth Amendment claim has no merit and therefore Defendant is entitled to entry of summary judgment in his favor on Plaintiff's Eighth Amendment

claim

In sum, Plaintiff has failed to show that there is either a disputed issue of material fact or that Defendant violated one of Plaintiff's constitutional rights. Defendant's motion for summary judgment should, therefore, be granted.[6]

## V.  CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that:

Defendant's Motion to Dismiss Plaintiff's First Amended Complaint or in the Alternative, Motion for Summary Judgment, ECF No. 22,

---

[6] Even assuming Plaintiff's request for relief had included compensatory or nominal damages, Defendant would still prevail. An official wishing to invoke the affirmative defense of qualified immunity must have been acting within his discretionary authority. *Skop v. Atlanta,* 485 F.3d 1130, 1136 (11th Cir. 2007). A government official can prove he acted within the scope of his discretionary authority by showing 'objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority.'" *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988) (quoting *Barker v. Norman*, 651 F.2d 1107, 1121 (5th Cir. 1981); *Douthit v. Jones*, 619 F.2d 527 (5th Cir. 1980)). If a defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not proper. *Lee v. Ferraro*, 284 F.3d 1188, 1197-98 (11th Cir. 2002).

In this case, it is undisputed that Defendant was acting within the scope of his discretionary authority at all relevant times. The actions Defendant took—or allegedly failed to take—all relate to his job as a BOP Counselor. (Thomas Dec. ¶¶ 1–4.) Plaintiff has presented no evidence suggesting that the actions in this case were somehow outside the scope of Defendant's authority as a BOP Counselor. The burden, therefore, shifts to Plaintiff to show that Defendant violated one of Plaintiff's clearly established constitutional rights.  As discussed, Plaintiff has not demonstrated that Defendant violated a clearly established constitutional right. Accordingly, even if Plaintiff had requested damages, Defendant would be entitled to qualified immunity.

should be **GRANTED,** and summary final judgment should be entered in favor of Defendant.

**IN CHAMBERS**, this 1st day of December, 2016.


*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge


## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**